AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. **2:20-MJ-00251** |
| One United States Postal Service parcel bearing tracking number 9500 1143 1263 0003 1838 57, postmarked on January 3, 2020, in San Gabriel, California | ) ) ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 843(b), 846 | See attached Affidavit |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of_____days *(give exact ending date if more than 30 days*:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Gregory Mallette, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

_____
*Judge's signature*

City and state:  Los Angeles, CA                    Hon. Alexander F. MacKinnon, U.S. Magistrate Judge
*Printed name and title*

AUSA:  Brian R. Faerstein x3819

## ATTACHMENT A

PARCEL TO BE SEARCHED

**The SUBJECT PARCEL**

One United States Postal Service parcel bearing tracking number 9500 1143 1263 0003 1838 57, postmarked on January 3, 2020, in San Gabriel, California (the "SUBJECT PARCEL"). The SUBJECT PARCEL is further described as a padded envelope measuring 12½ inches X 19 inches with the seams at both ends completely taped over with brown packing tape, and bearing a handwritten address label with the following recipient information: "Jin Xin Li 3535 Lebon Dr. Apt. 2405, San Diego CA 92122-4595;" and with the following sender information: "LINYANG LI 849 Carillo Dr., San Gabriel CA 92776." The SUBJECT PARCEL is currently in the custody of the San Gabriel Police Department.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

The following items are to be seized from the parcel described in Attachment A, which constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution of and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribute and to Possess with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance):

      a.    Any controlled substances;

      b.    Currency, money orders, bank checks, or similar monetary instruments in quantities over $1,000.00; and

      c.    Packaging material.

**AFFIDAVIT**

I, Gregory Mallette, being duly sworn, declare and state as follows:

## I. **PURPOSE OF AFFIDAVIT**

1.    This affidavit is made in support of an application for a search warrant for a United States Postal Service ("USPS") parcel bearing tracking number "9500 1143 1263 0003 1838 57," addressed to "Jin Xin Li 3535 Lebon Dr. Apt. 2405, San Diego CA 92122-4595," sent by "Linyang Li 849 Carillo Dr., San Gabriel CA 92776," and postmarked January 3, 2020 in San Gabriel, California (the "SUBJECT PARCEL"). The SUBJECT PARCEL is currently in the custody of the San Gabriel Police Department, as described more fully in Attachment A. The requested search warrant seeks authorization to seize evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution of and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribute and to Possess with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance) (the "SUBJECT OFFENSES"), as described more fully in Attachment B. Attachments A and B are incorporated by reference herein.

2.    The facts set forth in this affidavit are based upon my training and experience, personal observation, and information from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there

1

is sufficient probable cause for the requested warrant and does
not purport to set forth all of my knowledge of or investigation
into this matter.  Unless specifically indicated otherwise, all
conversations and statements described in this affidavit are
related in substance and in part only.

## II. <u>BACKGROUND FOR TFO GREGORY MALLETTE</u>

3.     I am a police officer with the San Gabriel Police
Department ("SGPD") as well as a task force officer ("TFO") with
the United States Drug Enforcement Administration ("DEA").  I am
currently assigned to the High Intensity Drug Trafficking Areas
("HIDTA") program in Los Angeles.

4.     I have served as a police officer for over 31 years.
During that time, I have held various assignments.  Among other
things, as a detective, I investigated a variety of criminal
offenses, including street-level to mid-level narcotics sales
and trafficking, crimes against persons, burglary, theft,
domestic violence, and sex crimes.  I also was previously
assigned as a TFO at the Los Angeles Interagency Metropolitan
Police Apprehension Crime Task Force ("LA IMPACT"), where I
conducted narcotics investigations involving drug smuggling
through the use of postal services.  I have personally been
involved in the seizure of hundreds of parcels containing
narcotics and the proceeds from narcotic sales.  I have worked
on investigations at both the state and federal levels that have
resulted in the arrest of suspects and the seizure of currency,
narcotics, and firearms.

5.    I have attended over 200 hours of training specifically related to the sales, smuggling, and distribution of narcotics.  Over the past 31 years, I have had conversations with narcotics users, informants, dealers, and sellers pertaining to using, selling, packaging, and smuggling narcotics.  I am currently a member of the California Narcotic Officers' Association and past member of the Western States Information Network, International Narcotics Interdiction Association, and the California Homicide Investigators Association.

### III. SUMMARY OF PROBABLE CAUSE

6.    Based on information the SGPD received from the Department of Homeland Security, Homeland Security Investigations ("HSI"), SGPD officers conducted surveillance on a suspected narcotics trafficker on January 3, 2020.  On that date, SGPD officers saw the suspected trafficker engaging in a suspicious pattern of activity characteristic of hand-to-hand drug sales.  SGPD officers further observed the suspected trafficker deposit two parcels, including the SUBJECT PARCEL, at a post office in San Gabriel, California.  The SUBJECT PARCEL had indicia that suggested it may contain drugs or items contaminated by drugs.  A trained drug-detecting dog alerted to the presence of drugs or drug-contaminated items in the SUBJECT PARCEL.

### IV. STATEMENT OF PROBABLE CAUSE

#### A.    Background

7.    Based on my training and experience related to parcel

3

interdiction and narcotics investigations as well as information provided to me by other law enforcement investigators with training and experience investigating narcotics trafficking, I know the following:

      a.   Los Angeles County is a major source area for illegal narcotics. As such, drugs are frequently transported from Los Angeles via the United States Mail, and the proceeds from drug sales are frequently returned to Los Angeles through the mail. These proceeds are generally in the form of currency, money orders, bank checks, or similar monetary instruments in an amount over $1000.00.

      b.   Drug distributors often use the United States mail to ship and receive drugs and/or cash or monetary proceeds from the sale of drugs because of its speed, reliability, and, in certain cases, the ability to track a parcel's progress to delivery. The United States mail provides drug distributors the ability to engage in drug trafficking activities over a larger geographic area with limited risk of their activities being detected.

     8.   The following indicia suggest that a parcel may contain drugs or drug distribution proceeds:

      a.   The parcel is contained in a padded envelope to reduce the chance that a carrier can feel the shape of the object or objects in the package;

      b.   The sender and recipient information is handwritten and often does not contain a business account number;

c.    The seams of the parcel are heavily taped or glued shut;

d.    Multiple parcels are mailed by the same individual on the same day.

9.    When parcels exhibiting such indicia are detected, they are typically the subject of further investigation, which may include verification of the addressee and return addresses and/or inspection by drug-detecting dogs.

## B.    Initial Investigation and Identification of the SUBJECT PARCEL

10.    Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

11.    In November 2019, the SGPD was provided information by HSI regarding an investigation HSI was conducting into a subject suspected of narcotics trafficking and identity-theft-related activities.  Specifically, HSI informed the SGPD that it was investigating a subject identified as LINYANG LI for selling ecstasy (MDMA) as well as possibly fraudulent identification cards.  According to HSI, it initially received information about these suspected activities from a confidential informant (the "CI").[1]

12.    HSI surveilled LI on November 6, 2019, from approximately 1:00pm to approximately 2:50pm.  During that time, HSI saw LI conducting several suspected hand-to-hand

_____

[1] According to information obtained from HSI, the CI was working with HSI for consideration of the potential delay of a deportation order.

5

transactions that HSI believed to be narcotics sales.   Also
during this surveillance, HSI conducted a controlled purchase of
10 pills of suspected MDMA[2] from LI using a law enforcement
officer acting in an undercover capacity.   Ultimately, HSI ceded
the narcotics component (as distinguished from the fraudulent
identification card component) of the investigation to the SGPD.

13.   On January 3, 2020, Detective Eric Britt and Detective
Steve Gaona of the SGPD established surveillance at LI's
suspected apartment, located at 849 Carillo Drive, San Gabriel,
California.[3]   The detectives saw LI enter and exit his apartment
several times during the day, walking to a nearby alley and out
of their sight for short periods of time before returning to his
apartment.   The detectives believed this pattern of movement was
consistent with LI possibly conducting hand-to-hand narcotics
transactions.

14.   On the same date, Detective Britt saw LI exit his
apartment carrying two envelope-type parcels and enter a
vehicle.   The detectives followed LI to a USPS facility located
at 120 S. Del Mar Avenue, San Gabriel, California.   Detective
Gaona followed LI into the USPS facility and witnessed LI
deposit the two parcels, one of which was later identified as
the SUBJECT PARCEL, with a USPS employee.

---

[2] HSI has sent the suspected MDMA for testing; however, no
lab results have been sent back at this time.

[3] This address is the same address as that SGPD ultimately
found to be listed in the sender information on the SUBJECT
PARCEL.

15.   After LI paid for his postage and exited the USPS facility, Detective Gaona contacted the postal clerk who assisted LI.   Detective Gaona identified himself and stated he was conducting an investigation and asked the clerk to set the SUBJECT PARCEL aside.   A supervisor at the USPS facility then led Detective Gaona into a private room separated from the general public where the SUBJECT PARCEL and the second parcel were set aside in order for them to be further examined.

16.   Detective Gaona saw that the SUBJECT PARCEL possessed the following characteristics often associated with narcotics trafficking activities as previously described herein:

  a.   The parcel was packaged in a padded envelope;

  b.   The sender and recipient information was handwritten;

  c.   The SUBJECT PARCEL was mailed using first class mail service with no business account number; and

  d.   The seams on the SUBJECT PARCEL were heavily taped.

17.   Detective Gaona waited for approximately 90 minutes before a K9 unit arrived for further investigation.[4]

**C.   Drug Detection Dog Alerts on the SUBJECT PARCEL**

18.   SGPD Officer Paul Puente arrived at the San Gabriel USPS facility with his K9 "Bentley," a trained drug-detection

---

[4] Detective Gaona did not check law enforcement databases for information regarding the recipient names and addresses on the SUBJECT PARCEL and the second parcel while waiting for the K9 unit to arrive.   I conducted those queries on January 14, 2020.   With respect to the SUBJECT PARCEL, the recipient address in San Diego is a true address.   However, I was unable to find any person named "Jin Xin Li" associated with that address.

7

dog. Officer Puente separated the SUBJECT PARCEL and the second parcel LI had deposited at the USPS facility and deployed "Bentley" to investigate the parcels. "Bentley" made a positive alert to the SUBJECT PARCEL, indicating the presence of drugs or other items such as the proceeds from the sale of drugs, which have been recently contaminated by or associated with the odor of drugs. "Bentley" did not make a positive alert to the second parcel. The SGPD seized the SUBJECT PARCEL and the other parcel pending a federal search warrant for the SUBJECT PARCEL.

19.     Attached as Exhibit 1, and incorporated by reference herein, is a true and correct copy of information provided to me by Officer Puente regarding "Bentley's" training and experience in detecting drugs.

### D.     Consent Search of LI's Vehicle

20.     Shortly after LI left the USPS facility, he was stopped by a marked SGPD patrol car for a traffic violation, specifically, his vehicle did not have a front license plate, in violation of California Vehicle Code Section 5200(a). During the traffic stop, LI provided verbal consent to search his vehicle. SGPD officers searched his car and found four suspected ecstasy pills in the center console cup holder. Officers also found nineteen suspected ecstasy pills, two Adderall pills, one gram of suspected cocaine, $5,365.00 in U.S. currency, and seven identification cards with names belonging to persons other than LI in the glove compartment.

# V.  CONCLUSION

21.  For the reasons described herein, there is probable cause to believe that the SUBJECT PARCEL, as described in Attachment A, contains evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution of and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribute and to Possess with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance), as described in Attachment B.

_____

Gregory Mallette
DEA Task Force Officer

Subscribed to and sworn before me
this _____ day of January 2020.

_____

HONORABLE ALEXANDER F. MACKINNON
UNITED STATES MAGISTRATE JUDGE

9

# Exhibit 1

## Officer Puente and K-9 Bentley's Hero Page

Officer Paul Puente has been employed by the City of San Gabriel, as a sworn police officer, and has been so employed by the City of San Gabriel since June 21, 2008. In the past ten years as a police officer, I have investigated hundreds of theft related cases involving persons taking, selling, or using stolen property including, but not limited to identity theft.

I am currently assigned to the San Gabriel Police Department K-9 Unit with K-9 Bentley, a Belgian Malinois certified in apprehension and narcotic detection. Both Bentley and I have completed a 240 hour Basic Handler Course on 09-15-17, and a 240 Narcotic Detection Course on 02-16-18. These courses were completed at Adlerhorst International K-9 Academy in Jurupa Valley, California. I also completed a 16 hour course of Continued Education in Law Enforcement K-9 Operations at the Police K-9 Conference presented by Police K-9 Magazine on March 8th, 2018, I also completed an 8 hour Tactical Canine Casualty Care Course on 03-22-18 by Veterinary Tactical Group. Finally, we completed a 24 hour Canine Tactical Operations SKIDDS/CATS course on 09-12-18 conducted by Brad Smith.

Prior to the K-9 Unit, I was assigned to the Detective Bureau as a property crimes detective. During that time, and as a patrol officer, I have participated in numerous investigations related to burglary and theft of personal property, robbery, identity theft, and the sales or disposal of said property.

K-9 Bentley and I participate in weekly trainings that accumulate to 16 hours a month with the San Gabriel Valley K-9 group. These trainings include utilizing advanced officer safety tactics while searching buildings and open areas with a Police Service Dog (PSD) with the assistance a decoy/agitator. Trainings also consist of high finds and civil finds where the PSD is taught to guard and bark when locating human odor. Articles consisting of human odor are also hidden for the K-9 to find and alert the handler.

Narcotics detection is another area that is included in weekly trainings where illegal drugs are hidden in open areas, buildings and vehicles. K-9 Bentley is trained to passively alert on specific drug odors such as methamphetamines, cocaine, ecstasy, heroin, marijuana and certain prescription drugs. K-9 Bentley and I also conduct monthly maintenance training for both apprehension and narcotic detection at Adlerhorts K-9 Academy.

K-9 Bentley has assisted multiple police agencies with locating fleeing felons, as well as assisting local agencies with locating illegal drugs and currency inside parcels, vehicles and structures.